FIRST AMERICAN SAVINGS, F.A.

v.

M & I BANK OF
MENOMONEE FALLS.

Civ. A. No. 87–4412.

United States District Court,
E.D. Pennsylvania.

Feb. 26, 1988.

Walter Weir, Philadelphia, Pa., for plaintiff.

Gregory Harvey, Philadelphia, Pa., and Thomas Churchill, Milwaukee, Wis., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

I have before me cross-motions for summary judgment in this commercial paper litigation. The parties have stipulated to the material facts so I must now apply the appropriate principals of law.

### I. *Facts*

Plaintiff First American Savings, F.A. is a federally chartered savings and loan association organized and existing under the laws of the United States of America with a place of business located in Jenkintown, Pennsylvania. Plaintiff is a citizen of the Commonwealth of Pennsylvania. Defendant M & I Bank of Menomonee Falls is a state chartered banking corporation with its principal place of business located in Menomonee Falls, Wisconsin. Defendant is a citizen of the State of Wisconsin.

On January 2, 1987, plaintiff received for deposit from its customer, Martha Bonanni, a check drawn on defendant M & I Bank by its customer Henry Skorr in the amount of $18,800.00. The check was made payable to Henry Skorr and contained the purported endorsement of Henry Skorr followed by the endorsement of Martha Bonanni.

Plaintiff accepted the check for deposit to Martha Bonanni whose account was provisionally credited in the amount of $18,800.00. The check was then forwarded through the Federal Reserve system for presentment to defendant.

Plaintiff, a "depository institution" within the meaning of Regulation J, 12 C.F.R. § 210, sent the check, a "cash item" within the meaning of Regulation J, through the Federal Reserve system, and the check was presented for payment to the defendant, a "paying bank" within the meaning of Regulation J, on January 5, 1987. On January 6, 1987, defendant dishonored the check as having been drawn on a closed account and returned the check to the Federal Reserve Bank of Chicago.

The defendant did not notify plaintiff that it was dishonoring the check as required by Regulation J, 12 C.F.R. § 210:12(c). On January 9, 1987, Martha Bonanni withdrew $12,000.00 from her account. On January 12, 1987, at 11:59 a.m. Martha Bonanni withdrew an additional $5,000.00 from her account.

Plaintiff did not receive notice of defendant's dishonor of the check until January 12, 1987, at 1:45 p.m. when its correspondent, Provident National Bank, telephoned notification to plaintiff that the check had been dishonored by the defendant. At the time the check was charged back against Martha Bonanni's account, there was left on deposit the sum of $1,800.00. The return of the check by the defendant resulted in a $17,000.00 overdraft to the account of Martha Bonanni. Plaintiff has recovered from its customer $500.00 of the $17,000.00 overdraft, thereby leaving a principal loss of $16,500.00.

Subsequent to defendant's dishonor of the check, it was discovered that Henry Skorr's endorsement was forged. This was not, however, the reason that defendant dishonored the check. The check was dishonored because the drawee's account was closed at the time the check was delivered to defendant for payment. Defendant has refused to honor plaintiff's Regulation J claim because the payee's endorsement on the check is a forged endorsement.

Plaintiff notified its customer, Martha Bonanni, that the check was dishonored on January 12, 1987. In conducting its investigation, First American learned that Martha Bonanni was the mother of Roger Bonanni. Martha Bonanni advised plaintiff that she knew nothing about the transaction other than she engaged in the transaction at her son's request. During the early months of 1987, the Bank made a number of efforts to collect this indebtedness from Roger Bonanni who was ultimately arrested on February 6, 1987. Plaintiff has made demand upon both Martha Bonanni and Roger Bonanni to repay the amount of the overdraft and, other than the payment of $500.00, no further sums have been paid by Martha or Roger Bonanni. Plaintiff has not commenced any legal proceedings against Martha or Roger Bonanni to effectuate the collection of this indebtedness.

## II. *Discussion*

■ Essentially, plaintiff First American Savings seeks compensation from defendant M & I Bank for the loss it suffered because M & I Bank did not notify First American Savings that it was dishonoring a check for $18,800.00 as required by Regulation J, 12 C.F.R. § 210:12(c). Regulation J provides, in pertinent part, as follows:

(1) A paying bank that receives a cash item in the amount of $2,500 or more directly or indirectly from a Reserve Bank and determines not to pay it shall provide notice to the first bank to which the item was transferred for collection ("deposition bank") that the paying bank is returning the item unpaid.

(2) The paying bank shall provide the notice such that it is received ... by the depository bank by midnight of the second banking day of the paying bank following the deadline for return of the item as specified in paragraph (a) of this section ... Notice may be provided through any means, including return of the cash item so long as the cash item is received by the depositary bank within the time limits specified in this subparagraph.

\* \* \* \* \* \*

(6) A paying bank that fails to exercise ordinary care in meeting the requirements of this paragraph shall be liable to the depository bank for losses incurred by the depository bank, up to the amount of the item, reduced by the amount of the loss that the depository bank would have incurred even if the paying bank had used ordinary care.

12 C.F.R. 210:12(c)(1)(2)(6).

M & I Bank admits that it failed to provide the required notice of dishonor, but it denies liability based on the fact that the check carried a forged endorsement. M & I Bank claims that First American Savings breached various warranties of good title by sending a check carrying a forged endorsement. Consequently, First American Savings should suffer the ultimate loss.

To support its position, M & I Bank offers two particular warranties that First American Savings potentially breached by sending a check with a forged endorsement. Pursuant to the Uniform Commercial Code § 4–207(1)(a),

Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank *warrants to the payor bank or other payor who in good faith pays or accepts the item* that:

(1) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title.

13 Pa.C.S.A. § 4207 (1984). In addition, Regulation J, § 210.5(a)(2) provides for a similar warranty,

(a) Sender's agreement. By *sending an item* to a Reserve Bank, the sender:

(2) warrants to each Reserve Bank handling the item that (i) the sender has good title to the item or is authorized to obtain payment on behalf of one who has good title ...; but this subparagraph does not limit any warranty by a sender or other party arising under state law.

The warranty is passed from the Reserve Bank to the subsequent paying bank, M &

I Bank, pursuant to § 210.6(b)(1). M & I Bank claims that First American's breach of these warranties by sending a check bearing a forged endorsement precludes its recovery on the notice provision.

█ To further support its position, M & I Bank directs the Court to the Federal Reserve Board opinion addressing this issue. When Amending Regulation J in 1985, the Board of Governors stated

Several commenters raised questions concerning how the liability provisions of the notification requirement would overlap with existing requirements in the U.C.C. The Board believes that it would be possible to have duplicative or overlapping liability if the payor institution failed to comply with the notification requirement and another depositary institution failed to comply with the U.C.C.'s requirements concerning the return of the physical check. *Similarly, the failure of the payor institution to satisfy the notification requirement should not defeat the claims that the institution of first deposit for breach of warranty.* (Emphasis added) Amendment of Regulation J, 50 Fed.Reg. 5734, 5739–40 (February 12, 1985) (codified at 12 C.F.R. § 210).

It is proper to give great deference to rational Federal Reserve Board staff opinions. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980).

First American Savings admits that it would be liable to M & I Bank on a breach of warranty theory if M & I Bank honored the check. First American Savings contends, however, that a breach of warranty claim could not arise where M & I Bank never accepted, honored or paid the check.

█ I cannot agree with First American Savings' line of reasoning. Although a breach of warranty claim may not arise under U.C.C. 4–207(1)(a) unless the payor, M & I Bank, "pays or accepts" the check,[1] warranty liability arises under Regulation

---

1. I do not address the questions of whether Regulation J varies or amends the Code requirements per U.C.C. § 4–103(2); 13 Pa.C.S.A. § 4103(b) (1984) because it is not necessary to the resolution of this dispute.

J, § 210.5(a)(2) whenever a cash item is "sent." First American Savings clearly "sent" a cash item thus invoking the Regulation J warranty. Under the language of the Federal Reserve Board staff opinion quoted previously, M & I Bank's failure to satisfy the notification requirement of § 210:12(c) does not defeat its breach of warranty claim against First American Savings. This interpretation leaves the party closest in the collection chain to the endorsement forger suffering the ultimate loss which is consistent with the law on forged endorsements. *See Perini Corp. v. First National Bank,* 553 F.2d 398 (5th Cir.1977).

Consequently, I will grant summary judgment in M & I Bank's favor.