FIRST AMERICAN SAVINGS, FA

v.

M & I BANK OF
MENOMONEE FALLS

Appeal of FIRST AMERICAN
SAVINGS, F.A.

No. 88–1214.

United States Court of Appeals,
Third Circuit.

Argued Aug. 17, 1988.
Decided Jan. 9, 1989.

---

Walter Weir, Jr. (argued), Robert D. Sayre, Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Philadelphia, Pa., for appellant.

Gregory M. Harvey (argued), Morgan, Lewis & Bockius, Philadelphia, Pa., Thomas A. Churchill, Churchill, Duback & Smith, Milwaukee, Wis., for appellee.

Before STAPLETON and MANSMANN, Circuit Judges, and FISHER, District Judge.*

OPINION OF THE COURT

STAPLETON, Circuit Judge:

In this appeal we must determine the relationship between a paying bank's liability for failure to notify a depositary bank of a check's dishonor as required by Federal Reserve Regulation J, 12 C.F.R. § 210:1 *et seq.* ("Regulation J"), and a depositary bank's liability for breach warranty under

* Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting

the Uniform Commercial Code, 13 Pa.C. S.A. § 4207(a)(1) ("UCC"), and Regulation J, 12 C.F.R. § 210.5(a)(2). The district court held that the paying bank's warranty claim defeated the depositary bank's notification claim. 685 F.Supp. 473. We will reverse.

I.

On January 2, 1987, the appellant, First American Savings ("First American"), received a check for deposit by its customer, Martha Bonanni, drawn on the appellee, M & I Bank of Menomonee Falls ("M & I"). The check, in the amount of $18,800.00, was made payable to Henry Skorr and contained the purported endorsement of Henry Skorr, followed by the endorsement of Martha Bonanni. First American provisionally credited Mrs. Bonanni's account with $18,800.00, and then forwarded the check through the federal reserve system for presentment to M & I.

On January 5, 1987, M & I was presented with the check, and on the next day, January 6, it dishonored it because the account on which it had been drawn was closed. M & I, however, did not notify First American that it dishonored the check although required to do so under Regulation J which provides as follows:

(1) A paying bank that receives a cash item in the amount of $2,500 or more directly or indirectly from a Reserve Bank and determines not to pay it shall provide notice to the first bank to which the item was transferred for collection ("depositary bank") that the paying bank is returning the item unpaid....

(2) The paying bank shall provide the notice such that it is received ... by the depositary bank by midnight of the second banking day of the paying bank following the deadline for return of the item as specified in paragraph (a) of this section ... Notice may be provided through any means, including return of the cash item so long as the cash item is

by designation.

received by the depositary bank within the time limits specified in this subparagraph.[1] 12 C.F.R. § 210.12(c)(1) and (2).[2] Instead, M & I merely returned the check to the Federal Reserve Bank of Chicago.

As the check was making its way back to First American, Martha Bonanni withdrew a total of $17,000.00 from her account. She withdrew the money on two separate occasions—$12,000.00 on January 9, 1987 and $5,000.00 on January 12, 1988 at 11:59 a.m. First American did not receive notification of M & I's dishonor of the check until later in the day of January 12, 1987, at 1:45 p.m., when its correspondent, Provident National Bank, telephoned with the information. At that time, Mrs. Bonanni had only $1,800.00 left on deposit, thereby resulting in an overdraft of $17,000.00 when First American charged the check back against her account.

Subsequent to M & I's dishonor of the check, it was discovered that the payee's endorsement was forged. Although M & I dishonored the check because the account on which it had been drawn was closed, M & I nevertheless disclaimed any liability to First American for failure to notify because of the existence of the forgery. To date, First American has recovered only $500.00 of the overdraft, leaving a principal loss of $16,500.00.

First American commenced the present action in the district court to recover the balance of the overdraft, and moved for summary judgment on the basis of M & I's Regulation J violation. First American ar-

gued that had M & I given proper notification of dishonor, First American would have learned the check was being returned no later than midnight on January 8, 1987, and, therefore, could have prevented both of the withdrawals made by Mrs. Bonanni.

In defense, M & I cross moved for summary judgment arguing that First American was ultimately liable to M & I for breach of warranty of good title under the UCC and for breach of warranty that the check bore no forged endorsements under Regulation J. In keeping with prior common law, these warranties operate to place the loss suffered from a forged endorsement on the depositary bank as the party that took from the forger. Specifically, the UCC provides:

(a) *Warranties to Payor or Acceptor*—Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that:

(1) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has good title.

13 Pa.C.S.A. § 4207(a)(1). Similarly, Regulation J provides:

(a) *Sender's agreement.* By sending an item to a reserve bank, the sender:

(2) warrants to each reserve bank handling the item (i) the sender has good title to the item or is authorized to obtain payment on behalf of one who has good title . . .; but this subparagraph does not

---

**1.** As referenced in (2), "paragraph (a) of this section" provides:

(a) *Recovery of payment.* A paying bank that receives a cash item directly or indirectly from a Reserve Bank, other than for immediate payment over the counter, and that pays for the item as provided in § 210.9(a) of this subpart, may recover the payment if, before it has finally paid the item, it:

(1) Returns the item before midnight of its next banking day following the banking day of receipt; or

(2) Takes any other action to recover the payment within the times and by the means provided by state law.

The rules or practices of a clearinghouse through which the item was presented, or a special collection agreement under which the

item was presented, may not extend these return times, but may provide for a shorter return time.

Regulation J, 12 C.F.R. § 210.12(a)(1) and (2). By operation of § 210.12(a)(1) and § 210.12(c)(2), a payor bank ordinarily must notify the depositary bank of dishonor by midnight of the third banking day following receipt of the item.

**2.** The parties agree that First American is a "depositary institution" within the meaning of Regulation J, 12 C.F.R. § 210.2(k)(1), M & I is a "paying bank" within the meaning of Regulation J, 12 C.F.R. § 210.2(j)(2), and the check is a "cash item" within the meaning of Regulation J, 12 C.F.R. § 210.2(e).

limit any warranty by a sender or other party arising under state law.

12 C.F.R. § 210.5(a)(2).[3]

The district court granted M & I's cross motion for summary judgment essentially holding that First American breached its presentment warranty. The court rejected First American's argument, in response to M & I's cross motion, that a breach of warranty can occur only when the payor bank *honors*, or pays, a check bearing a forged endorsement, reasoning that, by its terms, Regulation J's warranty is created upon a bank's "sending" as opposed to "paying" an item. Moreover, the court noted that in revising Regulation J in 1985 to incorporate the notice requirement, the Federal Reserve Board commented:

> Several commentators raised questions concerning how the liability provision of the notification requirement would overlap with the existing requirements in the U.C.C. The Board believes that it would be possible to have duplicative or overlapping liability if the payor institution fails to comply with the notification requirement and another depositary institution failed to comply with the U.C.C. requirements concerning the return of the physical check. *Similarly, the failure of the payor institution to satisfy the notification requirement should not defeat the claims that the institution otherwise would have against the institution of first deposit for breach of warranty.*

Amendment of Regulation J, 50 Fed.Reg. 5734 (February 12, 1985) (emphasis supplied).

Relying on that language, and on the judicial deference owed to the Board's interpretation of its own regulations, the court concluded that M & I's warranty claim should not be defeated by its notification violation. The court held that as the party closest in the collection chain to the person who forged the endorsement, First American should suffer the ultimate loss.

Our standard of review of the district court's grant of summary judgment, involving the application of law to undisputed facts, is plenary. *Koshatka v. Philadelphia Newspapers Inc.*, 762 F.2d 329, 333 (3rd Cir.1985).

## II.

It is undisputed that M & I violated the notification provisions of Regulation J, and as a result would ordinarily be required to assume First American's loss. Regulation J expressly provides:

> A paying bank that fails to exercise ordinary care in meeting the requirements of [timely notice] shall be liable to the depositary bank for losses incurred by the depositary bank, up to the amount of the item, reduced by the amount of the loss that the depositary bank would have incurred even if the paying bank had used ordinary care.

12 C.F.R. § 210.12(c)(6). Indeed, the loss suffered by First American as a consequence of M & I's failure to notify it that the check had been dishonored is precisely the kind of loss the Federal Reserve Board sought to avoid when it promulgated the notification rule in 1985. As the Board explained at that time:

> The Board believes that timely notification of nonpayment will enable the institution of first deposit to take steps to protect itself from potential loss. Such measures may include extending a hold it may have placed on the account or placing a hold on other funds of the depositor. The Board believes that the proposal would provide significant public benefits by providing depositary institutions the opportunity to make funds available sooner to their customers. Accordingly, the Board has determined to adopt the notification proposal.

Amendment of Regulation J, 50 Fed.Reg. 5735 (February 12, 1985). In light of these

---

**3.** Pursuant to § 210.6(b)(1), the warranty is passed from the reserve bank to the subsequent paying bank. First American argues that because Regulation J contains no provision whereby a sending bank warrants *directly* to a subsequent collecting bank that it has good title, no such warranty exists. We find that argument to be without merit as clearly the two provisions are intended to operate together.

considerations, we perceive no reason why the subsequently discovered forged endorsement should change in any way M & I's liability to First American for the balance of the overdraft.

The UCC makes clear that only a payor bank that *honors* a check later found containing a forged endorsement can recover for breach of warranty from the depositary bank. According to Section 4207(a)(1), collecting banks such as First American warrant good title only to "the payor bank or other payor *who in good faith pays or accepts* the item." Because M & I dishonored, and therefore did not "pay or accept," Mrs. Bonanni's check, it cannot claim that First American breached its warranty of good title under the UCC. Thus, although ordinarily a forged endorsement would shift any loss onto the depositary bank, in this case, the forgery is of no consequence as M & I dishonored the check and accordingly can not rely on the UCC's warranty provision.

We further find, in contrast to the district court, that a payor bank must also have paid a check in order to recover under Regulation J's warranty provisions. While no mention is made in §. 210.5(a)(2) of such a requirement and by its terms the section provides that by *"sending* an item" a bank warrants good title, we believe the difference in language is one of form and not of substance. In a context like this, the purpose of casting the rule of liability in terms of warranty is to make the usual rules of warranty law applicable, including the requirement that one seeking to recover must demonstrate a loss occasioned by reliance on the express or implied representation. As the drafters of the comparable UCC provision note in their Commentary:

> The obligations imposed by this section are stated in terms of warranty. Warranty terms, which are not limited to sale transactions, are used with the intention of bringing in all the usual rules of law

applicable to warranties, and in particular the necessity of reliance in good faith and the availability of all remedies for breach of warranty, such as rescission of the transaction or an action for damages
> ...

13 Pa.C.S.A. § 3417 Comment 1.

In the situation before us, M & I suffered no loss in reliance on First American's implied representation that the endorsement was genuine. As a result, it has no meritorious warranty claim against First American and, accordingly, should not be permitted a set off against its liability to First American for the loss occasioned by its breach of duty under Regulation J to give notice of dishonor. Bailey, *Brady on Bank Checks* § 26.20 (6th ed. 1987) ("where no loss results from payment on a forged endorsement, a payor bank has no right of recovery from a bank that collected on the forged endorsement.") The loss which M & I will thus be required to assume will be a loss incurred as a result of its failure to give prompt notice of dishonor, not one resulting from its reliance of the genuineness of the endorsement.

We further note that we find no indication in § 210.5(a)(2)'s administrative history that it was intended to be more expansive than the UCC's warranty. More importantly, we can perceive no reason why the Federal Reserve Board would have wished to broaden the warranty in the manner suggested by M & I. Indeed, if we were to accept the reasoning of M & I and the district court, payor banks would be fully relieved of their obligation to notify depositary banks of a check's dishonor even when the reason for the dishonor is the detection of a forged signature. Such a result is at odds with the purpose of requiring prompt notification, specifically, to eliminate a depositary bank's avoidable loss occasioned by delay in notification.[4]

M & I's reliance on the Reserve Board's commentary is similarly misplaced. The

---

**4.** We have found no case holding that a breach of the warranty of presentment under § 210.5(a)(2) occurs only when a payor bank accepts the check, although we note that all the forged endorsement cases relied on by M & I involved checks which were honored by the

payor bank. The absence of relevant authority is not surprising, however, because the liability of a depositary bank to a payor bank for breach of warranty would ordinarily not become an issue where the payor bank neither accepted nor paid a check bearing a forged endorsement.

commentary, properly understood, states only that the additional burden placed on payor banks under the new notification rule does not alter liabilities under traditional warranty law. Under Section 210.-12(c), notice of dishonor must ordinarily be provided to the depositary bank before midnight of the third banking day following receipt of a check by the payor bank. In a situation where the payor bank pays and only later discovers a forged endorsement, it will want to deny liability on the check but may be unable to do so by the required deadline. If the notification requirement were to be interpreted as barring recovery from the depositary bank in such circumstances, the rule placing the loss occasioned by a forged endorsement on the depositary bank would, in effect, be overruled. The quoted commentary makes it clear such a result was not intended—that the payor's rights under the UCC's warranty of good title in such circumstances are not affected by the failure to give timely notice of dishonor. However, the commentary need not, and should not in our judgment, be read to take the position that a payor bank who *does not pay* a check on presentment has a claim for breach of the UCC's warranty of good title even though it has incurred no loss.

We stress that the Board's opinion refers specifically to the *"UCC"* warranty. As we have explained, that warranty, by its express terms, arises only in favor of a payor bank that has paid or accepted a check. Accordingly, it is clear that the Board was not thinking of the situation before us when it opined that: "... the failure of the payor institution to satisfy the notification requirement should not defeat the claims the institution otherwise would have against the institution of first deposit for breach of warranty." Amendment of Regulation J, 50 Fed.Reg. 5734 (February 12, 1985).

### III.

In sum, we hold that M & I violated its obligation under Regulation J to notify First American that it dishonored the check and is therefore liable for the balance of the overdraft. Accordingly, we will reverse the judgment of the district court and remand with instructions that judgment be entered in favor of First American.