**KOSHATKA, Edgar, Appellant,**

v.

**PHILADELPHIA NEWSPAPERS, INC. d/b/a the Philadelphia Inquirer and the Daily News.**

No. 84–1549.

United States Court of Appeals, Third Circuit.

Argued March 29, 1985.

Decided May 30, 1985.

As Amended June 25 and July 24, 1985.

Michael R. Needle (Argued), Needle Feldman & Herman, Philadelphia, Pa., for appellant.

Richard S. Meyer (Argued), Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for appellee.

Before ALDISERT, Chief Judge, and SLOVITER and STAPLETON, Circuit Judges.*

## OPINION OF THE COURT

ALDISERT, Chief Judge.

This appeal requires us to decide whether the district court properly held that a submission to and decision by an arbitrator barred an action at this time by appellant under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Specifically, we must evaluate the consequence of the arbitrator's ruling that appellant could not grieve individually, but that his claim could be and was subsumed in the grievance presented by his union. We conclude that because the union may proceed to arbitration on appellant's claim, his § 301 action was premature. We therefore affirm.

### I.

From 1974 to 1982, appellant Edgar Koshatka worked as a freelance writer doing entertainment stories for the Philadelphia Inquirer. Throughout this time, he was paid on a per piece basis for his articles and a weekly entertainment column and was considered a "non-staff correspondent." The collective bargaining agreement in effect for regular employees of the Inquirer during the relevant period specifically stated that it did not apply to "non-staff correspondents," Agreement § 1(a), app. at 30–31, and placed limits upon the use of the freelancers. *Id.* § 28, app. at 72. The Agreement also specified a method of binding arbitration for "[a]ny dispute as to the interpretation of any clause of this agreement." *Id.* § 32, app. at 74.

Koshatka contends that the amount of work he did for the paper gradually increased to the point that, in 1978, he was doing more work than the regular staff members in the entertainment department.[1] In 1979, he formally requested that the Inquirer hire him as a full-time staff member and the newspaper refused. Appellant stated, however, that "oral promises and statements of encouragement" led him to believe that the newspaper would eventually hire him. App. at 310. After waiting for this promise to be fulfilled, appellant complained to the Newspaper Guild of Greater Philadelphia, the collective bargaining representative of the Inquirer's staff employees. On March 2, 1982, the Guild filed a formal grievance, under the terms of the collective bargaining agreement, with Philadelphia Newspapers, Inc., the Inquirer's publisher (hereinafter, "the Inquirer"). Through an appropriate official, the Guild sought, *inter alia,* to have appellant placed on the Inquirer's "regular employee roster" and provided with back pay and benefits corresponding to that status:

Please consider this a formal demand for a joint board hearing in the Guild's grievance concerning the improper use of stringers, including a demand that certain of the stringers be declared staffers by virtue of their routine.

In particular, although not limited to, this grievance centers around Edgar Koshatka, whom the company alleges is a stringer and the Guild contends is more properly classified as a full-time employee and demands his status be adjusted to

---

* At the time of oral argument Judge Stapleton was Chief Judge of the United States District Court for the District of Delaware, sitting by designation. He is now a member of this Court.

1. For example, in 1980, of 226 pop-music related articles published in the Inquirer, he wrote 144. App. at 329–34.

the same with him receiving full retroactive compensation and benefits from the day he began working regularly for The Inquirer's Features Department, approximately early 1977.

I must point out that this issue, as well as numerous improper use of stringer issues have been repeatedly brought to the company's attention at the grievance table and in some instances the company has acknowledged its error. In the Koshatka case however there has been no admission, only an attempt to cloud the issue—alleging that Koshatka was hired to work with a staffer "who couldn't carry his own load."

*Id.* at 226.

Plaintiff has conceded that "[t]he Guild thereafter wrote to the American Arbitration Association requesting the arbitration of 'Edgar Koshatka Classification Grievance.' " [2]

On April 7, 1983, the Guild and the Inquirer appeared before an arbitrator to determine the arbitrability of the Guild's claim. As reported by the arbitrator:

The Union claims that the Company has violated the Agreement by using stringers or free-lance writers to an extent equivalent to regular employment. In particular, the Union focuses on the situation of Edgar Koshatka, who started writing for the Company in October 1974.

. . . .

. . . The Union seeks to have Mr. Koshatka classified as a staff correspondent and/or compensated for the alleged period of full-time services.

*Id.* at 93–94. The remedy the Guild sought for appellant through arbitration was to "(a) compensate him and/or (b) have him classified as a regular staff writer." *Id.* at 97.

The arbitrator made two significant determinations: first, that because the Guild's charge alleged a violation of a contract right, it was arbitrable; second, that

Koshatka was "not entitled *personally* to seek relief under the Agreement." *Id.* at 98–99 (emphasis supplied).

The arbitrator rendered her decision on May 20, 1983. On August 25, 1983, appellant filed a praecipe to issue a writ of summons in the Philadelphia County Court of Common Pleas, purportedly to bring an action based on common law contract. On the same day, he filed this § 301 action in district court against the Inquirer claiming that he "was an employee ... within the ambit of Guild representation and within the intent and terms of the Guild-PNI [Inquirer] contracts," *id.* at 12, and alleging that under the terms of the Agreement he was due back pay, and that the newspaper's treatment of him had breached the Agreement (Counts I, II, III). He also made a claim for statutory wages under the Pennsylvania Wage Payment and Collection Law (Count IV). *Id.* at 12–16. It bears emphasis that the claim for back pay asserted in the federal court action tracks precisely the Guild's claim for "compensation for him" presented to the arbitrator. *Id.* at 97.

The district court granted summary judgment in favor of the Inquirer determining that the arbitrator had decided that appellant did not have bargaining unit status, and that this decision rested on the plain language of the Agreement. *Id.* at 174–76. Alternatively, under "pure contract law," the court held that appellant was not entitled to recover for breach of contract because of the clear "intention of the parties that plaintiff [appellant] was not to be covered by the collective bargaining agreement." *Id.* at 176–78. Appellant moved for reconsideration, arguing that the arbitrator did not rule on his status as a bargaining unit member; that if she did, the ruling was not rationally derived from the agreement; and that appellant had stated personal claims cognizable under § 301. *Id.* at 182–203. The district court

2. Plaintiff's Memorandum in Support of Its Motion for Reconsideration at 6, *reprinted in* App. at 182, 187.

denied this motion and plaintiff has appealed.

## II.

Koshatka argues before us that the district court erred by holding that the arbitrator's ruling on the arbitrability of his complaint barred his § 301 action. He also contends that he should not be required to exhaust the arbitration process because he was not within the bargaining unit to which the collective bargaining agreement applied. Finally, he argues that the district court erred by ruling on the common law contract issue, and that this ruling will prejudice him in a state court common law contract action.

■ We begin by stating our well-settled standard of review of summary judgment: on review, an appellate court must apply the same test that the district court should have utilized initially, and must determine whether "no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). In applying the law to undisputed facts, as here, our review of a grant of summary judgment is plenary. *Id.* at 573–74.

■ However, in this case Koshatka is appealing from the district court's denial of his motion for reconsideration. A motion for reconsideration is properly treated as a motion under Rule 59(e), F.R.Civ.P., to alter or amend the judgment. *Huff v. Metropolitan Life Insurance Co.*, 675 F.2d 119, 122–23 & n. 5 (6th Cir.1982). Although the appropriate standard of review for a motion to reconsider is generally whether the district court abused its discretion, if the court's denial was based upon the interpretation and application of a legal precept, review is plenary. *See Huff*, 675 F.2d at 122–23 n. 5; 6A J. Moore, Moore's Federal Practice ¶ 59.15[4] (2d ed. 1984); *see also, Cowger v. Arnold*, 460 F.2d 219, 220 (3d Cir.1972) (Rule 59(a) motion for a new trial also reviewed on basis of underlying final judgment). Here, because the district court's denial of appellant's motion to reconsider was based upon proper determination of the law in granting the defendant summary judgment, review of this denial is plenary. We now turn to the merits of appellant's contentions.

## III.

Appellant first argues that the district court erred by holding that the arbitrator's ruling on the arbitrability of the Guild's grievance barred the § 301 complaint. Our examination of this issue involves two components. Initially, we must determine whether the district court correctly upheld the arbitrator's ruling that the Guild's grievance was arbitrable. Only then must we consider whether the arbitration action pursuant to the collective bargaining agreement barred the § 301 suit.

## A.

■ We have stated previously that because of the strong federal policy favoring the private settlement of disputes based upon collective bargaining agreements, arbitration decisions are entitled to substantial deference and must be upheld if the ruling "draw[s] its essence from the collective bargaining agreement." *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969). This requirement is met

> if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Id.* (footnote omitted). In this case, the arbitrator's ruling clearly draws its essence from the collective bargaining agreement. The Agreement placed limits upon the Inquirer's use of freelancers. Agreement § 28, app. at 72. The Agreement also des-

ignated the Guild as "the exclusive agency and representative for purposes of adjusting grievances," *id.* § 2, app. at 33, and specified a method of binding arbitration for "[a]ny dispute as to the interpretation of any clause of this agreement." *Id.* § 32, app. at 74.

The arbitrator's holding concerning the arbitrability of the Guild's grievance therefore "drew its essence" from the Agreement, and the district court did not err in so holding. We now address the district court's ruling on the effect of finding the dispute arbitrable.

#### B.

The district court held that appellant was barred from bringing this § 301 action because the arbitrator ruled appellant was "not entitled to relief under the collective bargaining agreement." App. at 176. Although we agree with the district court's conclusion that appellant is barred from bringing this action, our analysis tracks another series of premises. Our beginning point is an emphasis that the Guild brought the grievance in behalf of appellant, *inter alia.* Thus the original grievance stated that "[i]n particular, although not limited to, this grievance centers around Edgar Koshatka." *Id.* at 226. In the district court appellant conceded that the Guild wrote to the American Arbitration Association requesting arbitration of the "Edgar Koshatka Classification Grievance." *Id.* at 187. The arbitrator characterized the Guild's efforts before her as a claim to compensate appellant or have him classified as a regular staff writer. *Id.* at 97. It is undisputed that the grievance *qua* a union grievance in behalf of appellant was held to be arbitrable by the arbitrator. *Id.* at 99. Thus, at the time appellant filed his § 301 claim in the district court (and the state court action) he still had a viable avenue to redress his grievance through the Guild in the arbitration proceeding. Because appellant elected to proceed through the grievance machinery afforded by the collective bargaining agreement, he may not attempt redress in court until the Guild's arbitration procedures are completed.

█ It is well established that in order to maintain a § 301 action on a labor contract, an employee must first exhaust the grievance and arbitration provisions of a contract. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965); *Findley v. Jones Motor Freight,* 639 F.2d 953, 957 (3d Cir. 1981). "Failure to exhaust those remedies may be a valid defense to a suit brought by an employee against his employer for a violation of the collective bargaining agreement." *Findley,* 639 F.2d at 957.

In her ruling, the arbitrator conclusively found that the Guild could continue to arbitrate the grievance and also stated that the union "could argue the appropriateness of its remedy" with regard to appellant. App. at 98–99. The arbitrator also appropriately ruled that "[w]hether or not a remedy for such a violation could benefit Edgar Koshatka is not at issue in this proceeding." *Id.* at 99. Such a statement was appropriate because the hearing was on arbitrability alone and any remedy would be contingent upon the substantive merits of the grievance.

█ Appellant's § 301 suit, brought after the arbitrator rendered her ruling, alleged essentially the identical claim presented to the arbitrator: that the Inquirer, by its use of appellant, had breached the collective bargaining agreement. *Id.* at 8–16. The remedy he sought also was essentially that which the Guild pursued in the arbitration—reinstatement on the Inquirer staff and back pay and benefits due under the contract. *Id.* at 16.

Appellant's § 301 action was therefore premature. His complaint was clearly subsumed within an ongoing arbitration procedure being pursued by the Guild at his request. As such, failure to exhaust the procedure provided in the Agreement was a valid defense for the Inquirer, *Findley,* 639 F.2d at 957, and provides a ground for upholding the district court's judgment, albeit for different reasons. *Myers v. Amer-*

*ican Dental Association,* 695 F.2d 716, 725–26 & n. 14 (3d Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983).

## IV.

But the appellant goes further. He argues that the exhaustion requirement is not absolute, and that an employee need not exhaust the contractual dispute resolution process when the union in exclusive control of that process has breached its duty to represent him fairly in that process. *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). Moreover, it is his submission that the duty of fair representation only flows to members of the bargaining unit, and because he is not a member of the bargaining unit, the exhaustion requirement does not apply to him.

▆ Under the peculiar facts of this case, we find appellant's argument unpersuasive. First, the reasons for waiving the exhaustion requirement do not apply here. Whatever remedies may be achieved under a *Vaca* proceeding after a factual presentation in a proper action—a circumstance not before us because the union is not a party—we will not conclude that appellant is without a *Vaca* remedy as a matter of law. The Supreme Court held in *Vaca* that the exhaustion requirement must be fulfilled unless "the union has sole power under the contract to invoke the higher stages of the grievance procedure, *and* if ... the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance.... To leave the employee remediless in such circumstances would, in our opinion, be a great injustice." *Id.* at 185–86. In this case, however, the Guild did not wrongfully refuse to process appellant's grievance. It is undisputed that the Guild brought this grievance because of appellant's complaint to them. The arbitrator's award merely ruled that the Guild could arbitrate the Inquirer's alleged breach of the labor contract, and also stated that "if the Union pursued a legitimate

grievance and proved a violation of its contractual rights, it could at least argue the appropriateness of its proposed remedy [concerning appellant]." App. at 98.

Because "Congress has expressly approved contract grievance procedures as a preferred method for settling disputes," *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965), the Guild must be given the opportunity to press the claim to the limit of the resolution process afforded. We deem it significant that the Guild may have had sufficient justification in not pursuing actively the arbitration proceedings after the arbitrator rendered her decision on May 20, 1983. Some ninety days after this decision, on August 25, 1983, Koshatka filed both his state court action and his § 301 complaint in federal court. The Guild could have concluded, with reason, that by seeking relief in both the state and federal courts, appellant had abandoned the arbitration proceedings.

Moreover, we believe that the Guild cannot deny appellant the duty of fair representation once it had agreed to represent him in the grievance process. Appellant voluntarily submitted his claim to arbitration, and the Guild voluntarily represented him in that process. A union's assumption of the tasks of representation is one of the bases upon which the duty of fair representation can arise. In *Steele v. Louisville & Nashville Railroad Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), the original duty of fair representation case, the Court held that under the Railway Labor Act, a union owes the duty of fair representation in the bargaining process to all members of a craft without discrimination on the basis of race:

It is a principle of general application that the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf, and that such a grant of power will not be deemed to dispense with all duty toward those for whom it is exercised unless so expressed.

*Id.* at 202, 65 S.Ct. at 231. Similar reasoning holds true here. Although in *Steele* the "granted power" was that granted to a collective bargaining representative under the Railway Labor Act, because of the strong federal policy favoring private dispute resolution, the power granted a union as the exclusive representative in the grievance process is equally compelling. By placing his dispute into the hands of the Guild, appellant relied upon its representing him fairly in the matter. Holding the Guild to a lower standard when it has exercised its power to arbitrate the matter under the contract would make the procedure a sham. Such a result would be in direct conflict with the federal policy favoring such private dispute resolution methods. The "principle of general application" that exercise of a duty of representation involves the assumption of a duty to do so fairly should therefore also apply here, where a union has voluntarily undertaken to pursue an employee's grievance.[3]

Finally, we note the fallacy of inconsistency in appellant's position. He alleges that the Inquirer owes him back pay and benefits under the labor contract, but says that he need not utilize the means of enforcement contained in that same contract. Thus he wants the collective bargaining cake, but wants to eat it too. The Supreme Court has said that he cannot have it both ways: "Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced." *Vaca,* 386 U.S. at 184, 87 S.Ct. at 913.

## V.

We do not think that appellant will be denied a forum for his complaint. If the Guild proceeds with arbitration, the Guild's conduct will be evaluated accordingly. If the Guild arbitrarily terminates the arbitration, appellant may claim breach of their duty of fair representation. We have a special concern here because of the unfortunate possibility that the Guild may be more interested in having Guild members perform appellant's work than in effectively pressing his grievance. The Guild's future conduct should be strictly scrutinized for possible conflicts of interest.[4]

## VI.

Appellant also contends that the district court erred by ruling *sua sponte* on a common law contract issue and that this ruling will prejudice him in his state court action based on this theory. Appellant did not plead a common law breach of contract claim in his complaint. App. at 8–16. Yet in both his memorandum in support of his motion for summary judgment, and in his affidavit in support of his motion to reconsider, he refers to oral commitments by the Inquirer: "promises that the situation would soon be rectified," *id.* at 107; "[t]here were oral promises and statements of encouragement that led me to believe that my official status would be recognized." *Id.* at 310.

In response to appellant's motion for reconsideration, the district court determined:

[P]laintiff avers that oral promises and statements of encouragement were made to him which led him to believe that he would be accorded the status of a staff correspondent sometime in the future. Contrary to plaintiff's assertion, these statements do not advance his claim.

---

**3.** Appellant cites this court's holding in *Peterson v. Lehigh Valley District Counsel,* 676 F.2d 81 (3d Cir.1982), for authority that he must belong to the bargaining unit to be accorded the duty of fair representation. That case, however, involved a situation where the union had not voluntarily agreed to arbitrate an employee's claim. *Id.* at 84–87. The same distinction also applies to the other cases upon which appellant relies. *See, e.g., Anderson v. Alpha Portland Industries, Inc.,* 727 F.2d 177, 180 (8th Cir.1984), *aff'd on rehearing,* 752 F.2d 1293 (8th Cir.1985);

*Hazen v. Western Union Telegraph Co.,* 518 F.2d 766, 768 (6th Cir.1975).

**4.** Also, we note that the statute of limitations for a combined § 301 and breach of the duty of fair representation claim is six months. *DelCostello v. Int'l Bh'd of Teamsters,* 462 U.S. 151, 169–72, 103 S.Ct. 2281, 2292–95, 76 L.Ed.2d 476 (1983). This limitation period would begin to run from the time arbitration has ceased. *See id.*

For mere oral promises stating a future intention to make a contract are not binding.

*Id.* at 369 (citations omitted). Although the court made this statement while denying a motion to reconsider, because the district court was addressing a question of law, review is plenary. *Huff*, 675 F.2d at 122–23 n. 5.

To the extent that the district court's opinion can be construed as adjudging a separate pendent state claim of oral contract between appellant and the Inquirer, we hold that the determination is clearly *obiter dictum* and has no res judicata or collateral estoppel effect.

 Under state law both res judicata and collateral estoppel require an identity of the issues involved, *Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668–69 (1975), and the determination must have been essential to the outcome of the prior action. *Philadelphia Marine Trade Association v. International Longshoremen's Association*, 453 Pa. 43, 46, 308 A.2d 98, 100 (1973). In this case, the issues involved are not identical; a federal § 301 action is distinct from a common law oral contract claim. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957). Additionally, because adequate alternate grounds exist for the district court's holding, the common law contract ruling was not essential to the outcome. Therefore, we specifically hold that this portion of the district court's opinion has no effect on appellant's claim in state court.

### VII.

Finally, we would like to address one disturbing aspect of this case. Counsel for appellee based his argument upon the requirement that appellant must exhaust the arbitration process prior to filing a § 301 suit. After appellee's brief was filed in this case, but nearly two months prior to oral argument, appellee's counsel received a letter from the American Arbitration Association stating that it had closed its file on the arbitration of the grievance that concerned the subject of this appeal. Although as emphasized earlier, we decide this case on the basis of the record before the district court, and although the arbitration obviously can be reinstated, this development is a matter of some interest to both the court and appellant. Appellee's counsel casually mentioned receipt of this letter at oral argument. It should not be necessary for a court to remind counsel that critical matters that develop subsequent to the close of the district court's record, such as the receipt of this letter, should be timely brought to the attention of the court far in advance of oral argument.

### VIII.

In sum, because appellant's § 301 complaint was subsumed within an ongoing grievance arbitration between the Guild and the Inquirer, we hold that appellant's § 301 action was premature and that the Guild should be given the opportunity to pursue the grievance. Should the Guild fail to do so, or should its pursuit of relief that will benefit appellant prove less than aggressive, nothing we say herein will preclude appellant's seeking remedies subsequently in a proper judicial forum. To be sure, the federal courts have subject matter jurisdiction in a claim charging a breach of the duty of fair representation or a § 301 claim against the proper parties. We also hold that any portion of the district court's opinion that may be construed to address a common law contract claim is *obiter dictum* and has no collateral estoppel or res judicata effect. The judgment of the district court will be affirmed without prejudice in accordance with the foregoing.