

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-26-2004

# Hitchens v. Montgomery

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1858

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Hitchens v. Montgomery" (2004). *2004 Decisions.* Paper 777.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/777

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1858

STEPHEN HITCHENS,
                                              Appellant

v.

COUNTY OF MONTGOMERY;
MONTGOMERY COUNTY CORRECTIONAL FACILITY;
WARDEN, LAWRENCE ROTH;
DEPUTY WARDEN, JULIO ALGARIN;
ED ECHAVARRIA; ERIC ECHAVARRIA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 00-cv-04282
(Honorable Herbert J. Hutton)

Argued October 29, 2003

Before: SCIRICA, *Chief Judge*, NYGAARD and AMBRO, *Circuit Judges*

(Filed April 26, 2004)

THEODORE Q. THOMPSON, ESQUIRE (ARGUED)
650 Sentry Parkway, Suite One
Blue Bell, Pennsylvania 19422
        Attorney for Appellant

CHRISTOPHER J. RUSEK, ESQUIRE (ARGUED)
ALFRED J. D'ANGELO, JR., ESQUIRE
Klett, Rooney, Lieber & Schorling
Two Logan Square, 12th Floor
18th and Arch Streets
Philadelphia, Pennsylvania 19103
        Attorneys for Appellees

---

## OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

At issue is whether plaintiff's 42 U.S.C. § 1983 First Amendment retaliation claim is barred by issue preclusion. We will reverse the grant of summary judgment for defendants and remand for further proceedings.

## I

Hitchens was a correctional officer at Montgomery County Correctional Facility from 1993 until his termination on May 3, 2000. In 1999, Hitchens allegedly was one of several correctional officers involved in union organizing activities. Hitchens alleges that Warden Lawrence Roth and Deputy Warden Julio Algarin saw him distribute union authorization cards in the prison parking lot after working hours.

In October 1999, Hitchens was warned about violating the prison employee facial hair policy, prohibiting beards. At another point in 1999, Hitchens was sent home to shave his goatee. On May 3, 2000, Hitchens contends he was relieved of duty for having

2

a five o'clock shadow. He was subsequently discharged for violating the facial hair policy.

On August 22, 2000, Hitchens commenced this federal action against Montgomery County Correctional Facility, Warden Lawrence Roth, Deputy Warden Julio Algarin, and Eric Echavarrio, alleging violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 1988 and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. He also alleged certain violations under state law.

Hitchens contends his termination for facial hair violations was pretextual. He asserted he was fired for his union organizing and for reasons of racial animus. Hitchens also alleged that threats were made to "get to him" through his mother because she too was employed at the Montgomery County Correctional Facility. He claims that Deputy Warden Algarin told assembled correctional officers that there were seven or eight "Judases among them" and that he would get rid of them. Hitchens claims that those who had been identified as supporting the unionization effort are no longer employed as correctional officers.

On July 7, 2001, defendants moved for summary judgment on all of Hitchens' claims. On February 20, 2002, the court granted summary judgment in favor of defendants on all claims except the First Amendment retaliation claim. *See Hitchens v. County of Montgomery*, No. 00-4282, 2002 U.S. Dist. LEXIS 2803, *37 (E.D. Pa. Feb. 20, 2002).

3

Concurrent to this action, Hitchens was also involved in a matter before the Pennsylvania Labor Relations Board. On August 4, 2000, AFSCME District Council 88, filed an unfair labor practice charge with the PLRB, alleging that Montgomery County violated § 1201(a)(1) and (a)(3) of the Pennsylvania Public Employee Relation Act ("PERA") by terminating Hitchens and another employee for their pro-union activity. The PLRB conducted hearings on November 7, 2000 and July 6, 2001. At the hearings, the parties had the opportunity to present testimony, cross-examine witnesses, and produce documentary evidence. The union presented four witnesses, Hitchens and fellow union supporters, Kevan Hinshillwood, Walter Hauk, and Brian Carlson. Defendants presented twelve witnesses.

The PLRB hearing examiner issued a Proposed Decision and Order on January 14, 2002, dismissing the PLRB charge against Montgomery County. *AFSCME Dist. Council 88 v. Montgomery County*, No. PERA-C-00-314 E, slip op. at 3 (PLRB Jan. 14, 2002). The hearing examiner found no evidence that any supervisors at Montgomery County Correctional Facility were aware of Hitchens' alleged protected union activity. *Id.* slip op. at 2. The hearing examiner determined that Hitchens had never discussed union representation with any of the prison's supervisors; nor had he distributed union literature in the facility other than in the parking lot during non-working hours. *Id.* slip op at 1.

Under 34 Pa. Code § 95.98(a), if no exceptions to the Proposed Decision and Order are filed with 20 days of the decision, the hearing examiner's decision becomes

final. *Id.* Neither Hitchens nor the union filed exceptions, and the Decision and Order dismissing the unfair labor practice charge became a final judgment under state law.

Procedural History

On March 6, 2002, Montgomery County filed a motion for leave to file a memorandum of law addressing the estoppel effect of the PLRB decision and a renewed motion for summary judgment. Hitchens did not respond to the renewed summary judgment motion within the required 14 day period under E.D. Pa. R. Civ. P. 7.1(c). But on March 19, 2002, Hitchens sent a letter to the District Court stating:

> In reference to [the Hitchens Matter] . . . attorney for the defendants, has requested leave to file a Memorandum of Law addressing the estoppel effect of a Labor Relations Board decision. Leave is not opposed but same should not be effective until after the Court has granted leave. Upon such an order Plaintiffs shall file their Memorandum of Law in Opposition to same. If you have any questions, please do not hesitate to give me a call.

App. 813.

On August 1, 2002, the District Court granted Montgomery County's motion for leave to file a memorandum and also granted its renewed motion for summary judgment. *Hitchens v. County of Montgomery*, 2002 U.S. Dist. LEXIS 15102, *17 (E.D. Pa. Aug. 1, 2002). Because Hitchens had failed to respond to the motion, the court noted the summary judgment motion was "uncontested." *Id.* at *4 n.1. The court held that issue preclusion barred Hitchens' First Amendment retaliation claim for two principal reasons: first, because the PLRB found there was no evidence that any supervisors at the Montgomery County Correctional Facility were aware of Hitchens' unionizing activity,

5

and second, because this same issue was integral to Hitchens' First Amendment claim. *See id.* at *16-17. As part of its analysis, the court found that the issue had been actually litigated, there was a final adjudication on the merits, the issue was essential to the prior judgment, and the prior litigation involved the parties or those in privity. *Id.* at *9-16.

Hitchens did not appeal that judgment. Instead, he made a timely motion for reconsideration. On February 27, 2003, the District Court denied that motion, holding there was no intervening change in controlling law; no new evidence had become available; and there was no clear error of law or manifest injustice. *Hitchens v. County of Montgomery*, No. 00-4282, slip op. at 1 (E.D. Pa. Feb. 27, 2003). The court explained that all of Hitchens' "concerns" regarding issue preclusion had been addressed in its July 32, 2002 Order and reiterated why all the necessary elements for issue preclusion were present. *Id.* n.1. Hitchens now appeals.[1]

## II

"Because an appeal from a denial of a Motion For Reconsideration brings up the underlying judgment for review, the standard of review varies with the nature of the underlying judgment." *McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 552-53 (3d Cir. 1992). Generally, the denial of a motion for reconsideration is reviewed for abuse of discretion. *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1203 (3d Cir. 1995). Where

---

[1]We have jurisdiction under 28 U.S.C. § 1291. The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1367.

6

a district court's denial of a motion to reconsider is based upon the interpretation of legal precepts, however, our review of the lower court's decision is plenary. *Id.*; *see also Koshatka v. Phila. Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir. 1985) (When "the district court's denial of appellant's motion to reconsider [i]s based upon proper determination of the law in granting the defendant summary judgment, review of this denial is plenary.").

## III

As noted, the District Court granted Montgomery County's motion for summary judgment and denied Hitchens' motion to reconsider. Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* A party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant adequately supports its motion under Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *See id.* at 324. A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment,

7

a court must draw all reasonable inferences in the light most favorable to the nonmovant. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). A court may not consider the weight or credibility of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Id.* But a party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).

As noted, Hitchens' renewed summary judgment motion was uncontested. When a summary judgment motion is uncontested, the non-responding party does not lose the summary judgment motion by default. Instead, where a movant has the burden of proof and a non-movant does not respond to a motion at all, a district court must still find that summary judgment is "appropriate" under FRCP 56(c) by determining "that the facts specified in or connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

## IV

The issue on appeal is whether Hitchens' First Amendment claim for retaliation under 42 U.S.C. § 1983 is barred by issue preclusion. Issue preclusion bars relitigation of identical issues adjudicated in a prior action against the same party or a party in privity. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). The doctrine derives from

the simple principle that later courts should honor the first actual decision of a matter that has been actually litigated. *Burlington N.R.R. Co. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995). Issue preclusion ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979).

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court decisions the same preclusive effect as they would be given "in the courts of the rendering state." *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 (3d Cir. 2002). When determining the preclusive effect of a law, a federal court must look to the law of the adjudicating state. *Id.* Under Pennsylvania law, issue preclusion applies where:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action;
> (2) there was a final judgment on the merits;
> (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and
> (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357-58 (3d Cir. 1999).[2]

---

[2]Courts have also applied a federal issue preclusion test which requires the presence of four factors before estoppel may be applied: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was

(continued...)

9

Federal courts must give preclusive effect to administrative findings of a state agency acting in a judicial capacity. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797-99 (1986) ("[W]hen a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts.") (internal quotations omitted) (citation omitted); *accord Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993) (In section 1983 cases, "state administrative factfinding is entitled to preclusive effect in the federal courts when the agency ruling remains unreviewed by state courts.").

## A. Identical Issue

For issue preclusion to apply, the issue decided in the prior adjudication must have been identical to the one presented in the later action. *Greenleaf*, 174 F.3d at 357. "Identity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (internal quotations omitted). Defendants, as the moving party, have the burden to demonstrate that the "issue actually litigated" in a previous action is identical to the current issue before the court.

---

[2](...continued)
fully represented in the prior action." *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 559 n.15 (3d Cir. 2002) (internal quotations omitted). Although we apply Pennsylvania law, the outcome would be the same under the federal standard.

*See id.* "To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be substantial." *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995) (internal quotations omitted).

Before the PLRB, success on the state unfair labor practice claim required a showing: "(1) that the employees engaged in protected activity; (2) that the employer was aware of the protected activity; and (3) but for the protected activity, the employer would not have taken the detrimental action." *AFSCME District Council 88*, No. PERA-C-00-314 E, slip op. at 2 (citing *St. Joseph's Hosp. v. PLRB*, 373 A.2d 1069 (Pa. 1977)). In his First Amendment claim here, Hitchens faces a similar measure of proof. First, he must establish that he engaged in speech or an activity protected by the First Amendment. *Baldassare v. State of N.J.*, 250 F.3d 188, 195 (3d Cir. 2001). Second, he must "show the protected activity was a substantial or motivating factor in the alleged retaliatory action." *Id.* Third, defendants can rebut the claim by demonstrating they "would have reached the same decision . . . even in the absence of the protected conduct." *Id.* (internal quotations omitted).

The District Court concluded the issues were identical, noting that "the same legal issues arose from the same factual context." *Hitchens*, 2002 U.S. Dist. LEXIS 15102, at *11. The District Court is correct. In both the state PLRB proceeding under PERA and this action, defendants' lack of awareness of Hitchens' union activity would defeat his claims. As noted, the hearing examiner found there was "insufficient evidence to

11

establish the County's knowledge of any protected activity" by Hitchens. *AFSCME Dist. Council 88*, slip op. at 3. For the First Amendment claim, to be "motivated" to retaliate against Hitchens' union activity, defendants first had to have knowledge of the activity. The issues are identical.

## B. Final Judgment on the Merits

There also must have been a final judgment on the merits. *Greenleaf*, 174 F.3d at 357. Though the PLRB is vested with the ultimate authority to determine whether an unfair labor practice has occurred, "all formal hearings are conducted by a hearing examiner designated by the Board, whose proposed decision to the Board will become final if no exceptions are filed within twenty days, or unless the Board itself on its own motion determines to review the proposed decision." *Phila. Hous. Auth. v. PLRB*, 620 A.2d 594, 597 n.5 (Pa. Commw. Ct. 1993) (citations omitted). Here, the hearing examiner's Proposed Decision and Order became a final and valid state judgment once no exceptions were filed 20 days after the decision. *See* 34 Pa. Code § 95.98.

## C. Same Parties or the Privities

Furthermore, the party against whom the plea is asserted must have been a party or in privity with a party to the prior adjudication. *Greenleaf*, 174 F.3d at 358. Privity is a "word used to say that the relationship between the one who is a party on the record and another is close enough" to estop the nonparty. *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir. 1950) (Goodrich, J., concurring). A relationship is usually considered

to be sufficiently close "only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." *Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 176 (3d Cir. 1994) (discussing New Jersey privity law).[3]

A pre-existing legal relationship is not only a sufficient condition for privity, it is also a necessary one. *Id.* at 177. Virtual representation entails more than merely serving the interests of the person outside the suit; it "requires a relationship by which the party in the suit is the legally designated representative of the non-party." *Id.* at 176-77. Put another way, privity will depend upon what obligation, if any, the representing party had to safeguard the interests of the nonparty. *See Moldovan v. Great Atl. & Pac. Tea Co.*, 790 F.2d 894, 899 (3d Cir. 1986) ("Whether the trustees had such a relationship with the prior litigation that its outcome can be held binding upon them depends upon what obligation [a union] had to safeguard their interests."); *see also Page v. Kegel*, 193 A. 110, 112 (Pa. Super. 1937) (holding that the "plaintiffs in the present suit stand in no legal relationship whatsoever to the parties in the prior suit, and, therefore, cannot be

---

[3]Although *Collins* involves an analysis of New Jersey privity law, New Jersey's approach does not differ significantly from Pennsylvania's. *See, e.g.*, *State v. Gonzalez*, 380 A.2d 1128, 1132 (N.J. 1977) (Issue preclusion applies when "(1) the issue decided in the prior adjudication was identical with the one presented in the subsequent action, (2) the prior action was a judgment on the merits, and (3) the party against whom it was asserted had been a party or in privity with a party to the earlier adjudication."). Pennsylvania privity law is also consistent with our federal privity law. *See First Options of Chicago, Inc. v. Kaplan*, 913 F. Supp. 377, 384 n.8 (E.D. Pa. 1996) ("State law requirements for res judicata and privity are not inconsistent with the federal law applied by [the Court of Appeals for the Third Circuit].").

13

considered in privity with them"). As we noted in *Collins*, 34 F.3d 172, "'A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party,'" and a person is represented by a party who is "'[i]nvested by the person with authority to represent him in an action.'" *Id.* at 177 (quoting Restatement (Second) of Judgments § 41).[4]

Some courts have held that the legal relationship for privity can be "an express or implied legal relationship." *See Pony Express Records, Inc. v. Springsteen*, 163 F. Supp. 2d 465, 474 (D.N.J. 2001) ("[V]irtual representation should not be found to have occurred without an express or implied legal relationship between the named party to the first action and the non-party sought to be bound.") (internal quotations omitted); *Symbol Technologies, Inc. v. Metrologic Instruments, Inc.*, 771 F. Supp. 1390, 1400 (D.N.J. 1991); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 393 (D. Del. 1999). "The Third Circuit has long recognized that privity is a legal conclusion; the privity

---

[4]Restatement (Second) of Judgments § 41 provides examples of representation: "A person is represented by a party who is: (a) The trustee of an estate or interest of which the person is a beneficiary; or (b) Invested by the person with authority to represent him in an action; or (c) The executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary; or (d) An official or agency invested by law with authority to represent the person's interests; or (e) The representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member."
*Collins*, 34 F.3d at 177 (quoting Restatement (Second) of Judgments § 41). Though *Collins* involves New Jersey law, Restatement (Second) of Judgments § 41 has been relied on by a Pennsylvania court as well. *See Sica v. Phila.*, 465 A.2d 91, 92 (Pa. Commw. Ct. 1983).

inquiry should be flexible enough to acknowledge the realities of parties' relationships."
*First Options*, 913 F. Supp. at 384.

As the District Court recognized, courts have held union members to be in privity with the union and have held that a decision against a union can bind union members in a subsequent action. *See, e.g.*, *Handley v. Phillips*, 715 F. Supp. 657, 666-67 (M.D. Pa. 1989) (holding a union member collaterally estopped from relitigating the terms of the collective bargaining agreement where the union had raised the issue in arbitration and in state court and where plaintiff had opportunity to assert her rights as union member); *Stokes v. Bd. of Tr. of Temple Univ.*, 683 F. Supp. 498, 502 (E.D. Pa. 1988)(holding that a union prosecuting an action on behalf of its members was in privity with them for purposes of collateral estoppel, even though plaintiffs were not parties to the action), *aff'd*, 872 F.2d 413 (3d Cir. 1989).

It appears, however, that Hitchens is not a member of the union.[5] The question is whether that precludes a finding of privity. We do not believe that the lack of union membership alone necessitates a finding against privity. Instead, what determines whether the union was Hitchens' legally designated representative is whether Hitchens

---

[5]Hitchens failed to make clear that he was not a union member in his briefs to the District Court or on appeal. It was not until oral argument that we were told Hitchens was not a union member. Understandably then, the District Court may have believed that Hitchens was a union member when it stated: "*Plaintiff's Union* prosecuted the action before the PLRB on his behalf. Courts in this Circuit have routinely held that a decision against a union can bind *union members* in a subsequent action." *Hitchens*, 2002 U.S. Dist. LEXIS 15102, at *15 (E.D. Pa. 2002) (citation omitted) (emphasis added).

15

invested the union "with the authority to represent him in an action." Restatement (Second) of Judgments § 41. If there is no union membership, the issue is whether a person granted the union the authority to act in a representative capacity.[6]

Under Pennsylvania law, "any interested party" can file an unfair labor practice charge. 43 P.S. § 1101.1302. An unfair labor practice complaint can be prosecuted before the PLRB "by the representatives of the employee organization or party filing the charge." 43 P.S. § 1101.1306. Here, there is some evidence that the union acted as Hitchens' representative at the PLRB hearing. The PLRB hearing focused on whether Hitchens was discharged in retaliation for his support for the union and whether this was an unfair labor practice. This is reflected by the opening statement by the union:

> AFSCME has been engaged in an organizing campaign among employees at Montgomery County in the prison unit, the correctional unit. The two gentlemen who are at the table with me, Mr. Hitchens and Mr. Hinshilwood, each of them is a former correctional officer for the county,

---

[6]A few courts have addressed issues that pertain to whether privity can be found between unions and non-members. The Court of Appeals for the Fifth Circuit has recognized, at least implicitly, the possibility of finding privity between a union and a non-member (a former union member who had retired). In *Meza v. Gen. Battery Corp.*, 908 F.2d 1262 (5th Cir. 1990), the court concluded that "[a]bsent some evidence that past members expressly or impliedly authorized the union to proceed in their behalf, there can be no presumption that the Union had authority to act in a representative capacity." *Id.* at 1271. Apparently, it was the lack of evidence of express or implicit authorization, not the lack of current union membership, that caused the court to conclude there was no privity. And the Court of Appeals for the First Circuit has held, albeit in a non-privity context, that "a union owes a duty of fair representation to nonmembers whom it has undertaken constructively to represent." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 833 (1st Cir. 1997).

16

each of them was discharged, and AFSCME's contention is that the discharge was in response to or retaliation for their union activity.
. . .
In a nutshell, it's our contention that the stated reasons for the discharge for these two gentlemen were [pretextual]. That they would not have been discharged but for their union activity on behalf of AFSCME. That's what we intend to prove.

App. 321-22. Moreover, Hitchens gave the appearance the union was representing him by sitting at the table with them and by testifying at the hearing.

But from the record, it is not clear what authority Hitchens gave to the union. For example, we do not know how the union came to bring and prosecute the unfair labor practice claim and in what capacity—we do not know whether Hitchens asked the union to file the PLRB complaint; whether he expressly or implicitly assented to the union's representation; whether he attempted to individually participate in the PLRB proceeding and was rebuffed; whether he sought to have any input or control over the PLRB proceeding and was refused; whether he willingly surrendered control of the proceeding to the union; or whether he sought to have the union file exceptions to the hearing examiner's decision but was refused. Hitchens simply claims he "did not have control of the proceedings," Appellant's Br. at 5, but there is insufficient evidence in the record to evaluate this claim. Had the issue been presented below, we are confident that the able District Court would have pursued this relationship. If in fact Hitchens was not a union member, the record needs further development on whether the union acted as his representative. We will remand to the District Court for a determination of what authority

17

was given and whether an "express or implied" legal relationship existed sufficient for privity to be found.

## D. Full and Fair Opportunity to Litigate

For issue preclusion to apply, the party against whom it is asserted must have had a full and fair opportunity to litigate the issue in question in a prior action. *Greenleaf*, 174 F.3d at 358. To prove the administrative forum was unfair, Hitchens must show that state procedures fell below the minimum requirements of due process as defined by federal law. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1074 (3d Cir. 1990).

At the PLRB hearing, Hitchens appeared to have had a full and fair opportunity to litigate the "awareness" issue. The union presented Hitchens' testimony as well at the testimony of other pro-union former employees who testified that Montgomery County Correctional Facility supervisors had knowledge of their union activity. The union had the opportunity to present any documents or evidence it desired at the hearing. To refute the union's claims, defendants presented prison supervisors who testified they were unaware of Hitchens' union activity. These witnesses were available for cross-examination. After the PLRB held for defendants, the union had the opportunity but declined to file an exception to the hearing examiner's decision. With all these due process protections, Hitchens, through the union, appeared to have had a full and fair opportunity to litigate the "awareness" issue.

18

## V

For the foregoing reasons, we will reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

———————————