NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARK N. CHAFFIN,**
*Plaintiff-Appellant*

**v.**

**MICHAEL R. BRADEN, LBC MANUFACTURING,**
*Defendants-Appellees*

---

2016-2572

---

Appeal from the United States District Court for the Southern District of Texas in No. 6:14-cv-00027, Judge Nancy F. Atlas.

---

Decided: June 23, 2017

---

LLOYD LEE DAVIS, III, Andrews Kurth Kenyon LLP, Houston, TX, argued for plaintiff-appellant. Also represented by DOUGLAS WILLIAM ROMMELMANN, BRIAN KENT WUNDER.

MIGUEL VILLARREAL, JR., Gunn, Lee & Cave, PC, San Antonio, TX, for defendants-appellees.

---

Before NEWMAN, CLEVENGER, and WALLACH, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

Mark Chaffin brought suit against Michael Braden and LBC Manufacturing (collectively, "LBC") for alleged infringement of U.S. Patent No. 6,932,912 ("the '912 patent"). The district court granted summary judgment of non-infringement in favor of LBC, ruling that there was no genuine dispute that the accused products did not practice all of the limitations of the asserted claims. The district court subsequently granted LBC's motion for "exceptional case" attorneys' fees under 35 U.S.C. § 285 (2012). Chaffin appeals the district court's rulings. For the reasons that follow, we reverse the district court's grant of summary judgment. Consequently, we also vacate the district court's award of attorneys' fees and remand for further proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

The '912 patent, titled "Wastewater Treatment System for Residential Septic Systems," relates to the treatment and disposal of sewage for residential or commercial settings. The most important aspect of the invention, as it relates to this appeal, is the mechanism for treating wastewater with chlorine disinfectant, prior to its disposal. Prior art septic systems oftentimes used a solid tablet of a chlorine compound, which would dissolve in the wastewater as it flowed over the tablet. '912 patent col. 1, ll. 45–53.

In contrast, the '912 patent describes a system wherein liquid chlorine is housed in its own canister and is consistently supplied to the flowing wastewater using a fluid mechanics principle known as the "venturi effect." In essence, when a fluid flows through a constricted space (*e.g.*, when the diameter of a pipe decreases), the fluid's velocity necessarily increases, resulting in a correspond-

ing drop in fluid pressure. The constriction that causes this physical effect is known as a "venturi." The '912 patent explains its use of the venturi effect as follows:

> The flow of wastewater through the venturi (restrictor disc) develops a significant drop in pressure in the venturi chamber, which is less than atmospheric pressure, allowing the atmospheric pressure to push chlorine solution from the storage canister, through the filter and orifice assembly, the supply tubing, and into the flowing treated effluent stream. The layman term for this phenomenon is referred to as "suction."

'912 patent col. 2, ll. 10–17. As the wastewater circulates through the venturi chamber, it maintains a lower-pressure environment—chlorine flows from its higher-pressure canister to the venturi, where it mixes with and disinfects the circulating wastewater.

Each of the asserted claims (claims 7, 20–22, 24) incorporates this general concept. For example, claim 7 recites:

> A wastewater treatment system for septic systems, comprising:
>
>> a storage-mixing tank having an inlet for receiving sewage effluent from a source;
>>
>> a pump located within said storage-mixing tank and having an inlet opening and a pump discharge in said storage-mixing tank;
>>
>> a recirculation pipe within said storage-mixing tank receiving sewage effluent from said pump discharge and having a terminal end located within said storage-mixing tank and defining a recirculation dis-charge opening;

> a chlorine supply canister having an internal volume adapted to contain a supply of chlorine; and
>
> a venturi chamber in communication with said recirculation pipe;
>
> a chlorine supply tube having a first end and a second end, said tube first end in communication with said venturi chamber and said tube second end in constant fluid communication with substantially the entire contained chlorine supply in said internal volume of said chlorine supply canister,
>
> wherein as recirculating pumped sewage effluent flows through said venturi chamber, *chlorine* from said internal volume of said supply canister *is continuously drawn into said venturi chamber and into said recirculation pipe.*

'912 patent, claim 7 (emphasis added). Critical to this appeal is the meaning of "continuously drawn," which also appears, with different phrasing, in the additional independent claims 20 and 22. *See id.* claim 20 ("A method for treating sewage effluent . . . , the method comprising the steps of: . . . pumping sewage effluent though a venturi chamber in communication with the recirculation pipe and developing a *suction to continuously draw chlorine . . . .*" (emphasis added)); claim 22 ("A wastewater treatment system for septic systems, comprising: . . . a venturi chamber . . . , wherein pumped sewage effluent flowing through said venturi chamber creates a *suction continuously drawing chlorine . . . .*" (emphasis added)).

Chaffin and LBC are competitors in the wastewater treatment industry. On February 24, 2014, Chaffin, through his counsel, sent a cease-and-desist letter to LBC demanding that it stop selling all products infringing the

'921 patent, in addition to a number of other conditions. Chaffin asserted that he had tested LBC's LBC500 product and had confirmed it to infringe the '921 patent's claims. The letter's demands were styled "NON-NEGOTIABLE." Joint Appendix at 1904. LBC refused Chaffin's terms. Consequently, Chaffin filed his patent infringement complaint in the Southern District of Texas on April 16, 2014. Chaffin filed an amended complaint on November 19, 2014, adding allegations of false marking; unfair competition and false advertising; and tortious interference with prospective relations. Following discovery, however, Chaffin ultimately dropped these additional claims, leaving only the claim for patent infringement at issue.

The district court conducted a *Markman* hearing on September 29, 2015, and issued its claim construction order on October 1, 2015. None of the terms at issue in the district court's order are disputed on appeal, and the parties did not seek the court's construction of "continuously draw."

The parties then filed a series of summary judgment motions, including LBC's motion for summary judgment of non-infringement. In its motion, LBC argued that the claim element concerning "continuously drawing" chlorine requires a continuous *flow* of chlorine from the supply container to the venturi chamber. LBC maintained that the undisputed evidence showed that the accused products did not demonstrate continuous flow but, rather, "intermittent" and "broken" flow, with "identifiable breaks"—*i.e.*, the flow is *dis*continuous. LBC SJ of Non-Infringement Brief at 15–16.

In response, Chaffin rejected LBC's interpretation of "continuously draw." Chaffin argued that a plain reading of the claim language does not require an unbroken stream or flow of chlorine—instead, the claims only require that chlorine be continuously *drawn*. Since there

was evidence showing that the volume of chlorine in the accused products was constantly increasing as the wastewater circulated, Chaffin explained that the chlorine must be "continuously drawn" in the LBC systems. Regardless of whether there are breaks in the flow of chlorine, Mr. Chaffin argued that "continuously drawing a mixture of chlorine with air still amounts to continuously drawing chlorine." Chaffin SJ Opposition Brief at 4.

The district court granted LBC's motion for summary judgment of non-infringement. Without addressing the parties' apparent disagreement regarding the proper reading of "continuously draw," the district court implicitly adopted LBC's view, holding that, "[a]t times, only air is drawn into the venturi chamber and, as a result, there is an interruption in the drawing of chlorine. . . . An interrupted draw of chlorine is not a continuous draw of chlorine." Joint Appendix at 7–8. Because the undisputed evidence showed "periods of time where only air, with no chlorine, is being drawn from the supply canister," the district court ruled for LBC. *Id.* at 9.

Following the district court's decision, Chaffin filed a motion for clarification and reconsideration. Chaffin explained that, even though the parties never requested a construction for the terms "continuously drawn," "continuously draw," or "continuously drawing," the court was nonetheless obligated to provide a construction in light of the disagreement that manifested itself during the course of summary judgment proceedings. Citing intrinsic evidence from the specification and prosecution history, in addition to dictionary definitions, Chaffin argued the correct plain and ordinary meaning of "continuously draw" was "continuously move by suction." Moreover, Chaffin maintained that the district court erred by adopting LBC's mistaken position, which required an "uninterrupted stream" of chlorine.

The district court found that Chaffin had waived any right to propose a particular claim construction for "continuously draw" by "failing to identify it as a disputed term and failing to seek construction during the *Markman* briefing and hearing." Joint Appendix at 16. Nonetheless, setting aside the issue of waiver, the district court concluded the plain and ordinary meaning of the term is "pull without interruption." Joint Appendix at 16–17. Applying this construction, the district court maintained its original judgment, repeating that, "[w]hen only air is being drawn from the chlorine canister into the venturi chamber, the drawing of chlorine is interrupted and, therefore, not continuous." *Id.* at 17.

On motion from LBC, the district court subsequently ordered that Chaffin pay LBC's attorneys' fees, finding the case to be exceptional under 35 U.S.C. § 285. The district court found the case exceptional "both with respect to the substantive weakness of [Chaffin's] position on infringement and the unreasonable manner in which [Chaffin] has handled this dispute." *Id.* at 27. Specifically, as to the substantive weakness of Chaffin's case, the district court noted that he was aware from the outset that the accused products "did not continuously draw chlorine"; nonetheless, he "persisted in asserting meritless positions for over two years." *Id.* And regarding Chaffin's unreasonable handling of the litigation, the district court pointed to the harshly worded pre-suit demand letter; Chaffin's unfounded allegations of false marking, unfair competition, and tortious interference, which were ultimately voluntarily dropped; and Chaffin's filing of a substantively weak motion for reconsideration.

Chaffin appealed to this court.

STANDARD OF REVIEW

The "ultimate question of the proper construction" of a patent is a question of law, which we review *de novo. Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335,

1339 (Fed. Cir. 2015). "[W]hen the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law." *Id.*

Applying Fifth Circuit law, we review a grant of summary judgment *de novo*. *Ineos USA LLC v. Berry Plastics Corp.*, 783 F.3d 865, 868 (Fed. Cir. 2015) (citing *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007); *see also Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1379 (Fed. Cir. 2016) ("We review a grant of summary judgment in accordance with the law of the regional circuit."). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

"[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's § 285 determination." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1749 (2014). "The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error: 'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* at 1748 n.2 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

DISCUSSION

On appeal Chaffin contends that the district court applied an incorrect construction for the "continuously draw" terms. As a result, Chaffin argues the district court erred in granting LBC's motion for summary judgment of non-infringement. Alternatively, Chaffin also argues that, even if summary judgment were appropriate, the district court abused its discretion in awarding attorneys' fees because the case is not exceptional.

I

Chaffin argues the district court reached the incorrect plain and ordinary meaning construction of "continuously draw," which led to its mistaken grant of summary judgment. Recognizing that the parties did not request a formal construction during *Markman* proceedings, Chaffin nevertheless maintains that the district court, faced with the parties' disagreement, should have conducted a full claim construction analysis. Chaffin contends that the proper plain and ordinary meaning of "continuously drawn," in light of the intrinsic evidence, is "continuously move by suction."

We first address the question of whether the doctrine of waiver precludes Chaffin from asserting a construction not raised during the *Markman* phase. We hold that it does not. In its order regarding Chaffin's motion for clarification and reconsideration, the district court ruled that Chaffin had waived its claim construction position. The district court nonetheless addressed, in the alternative, the construction of "continuously draw," construing the term to mean "pull without interruption." Joint Appendix at 16–17. While "[a]n argument made for the first time in a motion for reconsideration comes too late and is ordinarily deemed waived," *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F. 3d 1362, 1369 (Fed. Cir. 2014), the "general rule" is that a party does not waive and "may raise on appeal any issue that was raised *or* actually decided below." *Lifestyle Enter., Inc. v. United States*, 751 F.3d 1371, 1377 (Fed. Cir. 2014) (citing *United States v. Williams*, 504 U.S. 36, 41 (1992)). The district court reached the merits of and "passed upon" Chaffin's claim construction argument. *See Williams*, 504 U.S. at 41. Chaffin is entitled to raise the issue for review on appeal. *See id.*

As explained, the court ultimately did provide its own construction of "continuously draw," ruling that it meant

"pull without interruption." From the language alone, the district court's construction does not seem to differ meaningfully from Chaffin's own proposal: "continuously move by suction." Yet it is clear the district court implicitly adopted and imported LBC's view into its construction, emphasizing whether the flow of chlorine into the venturi was constant and uninterrupted. Joint Appendix at 17 ("When only air is being drawn from the chlorine canister into the venturi chamber, the drawing of chlorine is interrupted and, therefore, not continuous."). Chaffin's construction, however, focuses on the force of suction—*acting on* the chlorine—being continuous and constant. Chaffin Opening Brief at 18 ("The verb 'draw' means 'to cause to move after or toward one by applying continuous force;' or 'to cause to move in a given direction or to a given position.' In this case, the force applied on the chlorine is suction . . . ." (internal citation omitted)); *see also id.* at 23 ("The *nature* of the chlorine stream [in the accused products] is of no consequence. The *drawing* (or sucking) is still continuous . . . .").

The prosecution history cited by Chaffin is most illuminating. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("The prosecution history, which we have designated as part of the 'intrinsic evidence,' consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent."). "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention . . . ." *Id.*

During prosecution, the examiner issued a 35 U.S.C. § 102(e) rejection to Chaffin, in light of a U.S. Patent No. 6,627,071 ("the '071 patent"), invented by Braden. The rejection stated that the '071 patent already taught a system comprising each of the structural elements of claim 7 (among other claims). In his effort to traverse the rejection, Chaffin added the language containing the disputed term, now present in the issued claim 7: "where-

in as recirculating pumped sewage effluent flows through said venturi chamber, chlorine from said internal volume of said supply canister is continuously drawn into said venturi chamber and into said recirculation pipe." Joint Appendix at 297. Chaffin argued:

> [The '071 patent] does not disclose a system in which chlorine is continuously drawn into the venturi chamber and the recirculation pipe as the sewage effluent flows through the venturi chamber. Rather, [the '071 patent] discloses a chlorinator for dispensing a set volume of chlorine, regardless of how long the pump runs and recirculates the sewage effluent. . . . [A]pplicant's claimed invention siphons chlorine continuously as the pump flows the sewage effluent through the venturi chamber, whereas [the '071 patent] draws the entire volume of chlorine (typically in under a minute) and then ceases to supply chlorine and instead supplies air.

Joint Appendix at 306–07.

Ultimately, the examiner maintained its rejection, and Chaffin amended the claims in other ways. But what is clear from the statements in the prosecution history is that Chaffin added the "continuously drawn" language to distinguish the claimed invention from a particular piece of prior art—whereas the system described in the '071 patent supplied chlorine quickly and then "cease[d] to supply additional disinfectant fluid," the '912 patent's claimed invention draws chlorine "continuously": "as the pump flows the sewage effluent through the venturi chamber." *See id.*

In other words, during prosecution, Chaffin equated "continuously draw" with the ongoing supply of chlorine to the circulating wastewater. As the pump *continues* to operate and wastewater *continues* to flow through the venturi, chlorine *continues* to be supplied—to be "drawn"

through suction. The period of chlorine dispensing is equal to the period of wastewater circulation. It is this relationship that must be captured in the construction. Nowhere in the intrinsic record is there ever mention of a constant, uninterrupted flow or stream of chlorine. We thus hold that the terms "continuously [draw; drawn; drawing]" means "[dispense; dispensed; dispensing] in an ongoing fashion, as long as sewage effluent flows through the venturi chamber." But the flow of chlorine *need not* be uniform or uninterrupted.

Because the district court's grant of summary judgment in favor of LBC was grounded in the mistaken view that the asserted claims required an uninterrupted stream of chlorine entering the venturi chamber, we reverse the district court's judgment and remand for additional infringement proceedings.

## II

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "To be a 'prevailing party,' our precedent requires that the party have received at least some relief on the merits." *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010). Because we reverse the grant of summary judgment and remand for further proceedings, LBC is no longer the "prevailing party."

Therefore, we vacate the district court's award of attorneys' fees. We need not reach the question of whether the district court abused its discretion in finding this case to be "exceptional."

## CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of LBC and vacate the award of attorneys' fees. We remand the case for further proceedings, consistent with our holding.

## REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED

### COSTS

No costs.